NOT DESIGNATED FOR PUBLICATION

No. 125,591

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RYAN BILL NEIL,
*Appellant*.


MEMORANDUM OPINION

Appeal from Russell District Court; STEVEN E. JOHNSON, judge. Submitted without oral argument. Opinion filed June 7, 2024. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Daniel W. Krug*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Ryan Bill Neil appeals from his convictions for one count of aggravated assault with a deadly weapon and two counts of misdemeanor battery. Neil first argues the district court abused its discretion when it declined to grant a continuance to secure the attendance of Neil's witness, Tony Logsdon. In the alternative, Neil claims the district court abused its discretion when it declined to grant a new trial based on Logsdon's absence. Neil also contends the district court committed reversible error when it failed to provide a unanimity instruction for one of his battery charges. Finding no error, we affirm Neil's convictions.

1

FACTUAL AND PROCEDURAL HISTORY

A jury convicted Neil of one count of aggravated assault and two counts of misdemeanor battery. His convictions arose from two altercations with Nash Karst.

In the fall of 2020, Neil was living in Russell with his girlfriend, Brooke Pitcock. Pitcock previously had dated Karst. Even though Karst's relationship with Pitcock had ended, Karst visited Neil's home unannounced multiple times. Neil repeatedly told Karst to stop showing up at his house.

The evening of October 13, 2020, Karst was driving in Russell when he saw Pitcock's red Jeep pass him. Neil and Pitcock were driving home from the grocery store. Karst did not see who was in the vehicle. Karst said he spoke with Pitcock earlier that day about seeing his new house, so he followed the Jeep. If she was alone, he was going to ask Pitcock about when she could come visit, but if he saw Neil at the house, he was going to keep driving. Karst saw Pitcock unloading groceries from the rear passenger side of the Jeep, so he stopped his vehicle in the road in front of Neil's home.

Neil noticed the vehicle in front of his home. Unsure at first who it was, Neil quickly realized it was likely Karst. Neil testified he walked around the front of the van to the driver's side window and took a pistol out from his waistband. Neil said he held the pistol by his side pointed downward with the gun uncocked and unloaded. Neil demanded that Karst leave, but Karst refused. Neil claimed he saw Karst use his left arm to reach toward his right side. Concerned that Karst was reaching for a gun, Neil struck Karst in the head twice with the bottom of his pistol.

Karst testified, however, he was trying to roll down his passenger side window to talk with Pitcock when he heard a gun being cocked. Karst then felt the gun press up against his temple. He turned his head to see Neil pointing a handgun at him. Without

exchanging words, Neil struck Karst with the pistol once in the shoulder and twice in the face. Karst immediately drove off.

Karst went to his mother's house, and his mother called an ambulance because Karst's face was bleeding. Paramedics came to the house to treat Karst's wounds, and eventually, law enforcement officers showed up. Karst told the police about the incident with Neil. On November 4, 2020, the State charged Neil with misdemeanor battery in Russell County case No. 20 CR 129. The State amended the complaint in March 2021 to add a count of aggravated assault with a deadly weapon.

The second altercation occurred the evening of April 11, 2021. Karst stopped at Casey's General Store in Russell to get some food and groceries. Neil also went to Casey's that evening with his friend, Tony Logsdon. Neil went inside while Logsdon stayed in the vehicle. Karst was in the first aisle near the window trying on sunglasses when he felt someone push him from behind. Neil had bumped Karst as he walked by and said, "Excuse me." Karst retorted, "Yeah, excuse you" and immediately proceeded to the checkout counter.

While Karst was checking out, Neil approached and commented on the groceries he was buying. An argument ensued. Karst claimed Neil said he needed to stay away because Karst would call the police on him. Karst denied pressing charges on him, but admitted making a comment about losing his dog in a house fire. Neil said Karst's comments about barbecuing his dog really upset him. Karst testified he completed his purchases and backed out of the convenience store while maintaining his distance from Neil.

The cashier testified that Neil punched Karst in the face before they went outside. The cashier told another employee to contact the police. Meanwhile, Neil followed Karst

3

out to the parking lot. Karst attempted to elude Neil's challenge to a fight. At one point, Karst swung his bag of groceries at Neil, causing the contents to spill onto the ground.

Neil testified Karst refused to fight him because Karst accused him of having a weapon, so Neil lifted his shirt to indicate he was unarmed. Coincidentally, Karst's father, Monty Karst, had pulled into the parking lot. Neil said Monty stepped out of his vehicle and entered the encounter. Monty told them to "knock it off" and attempted to divert Neil's aggression from Karst to himself. Monty testified Neil told Karst, "I'm going to kill you . . . for pressing charges on me," but Neil denied ever saying this.

Karst claimed Neil stopped advancing when Karst reached the gas pumps. Karst then saw Neil reach for his waistband, and he thought Neil was pulling out a weapon. Realizing that Neil did not have a weapon, Karst stated, "You don't have your gun, do you, this time?" Neil replied, "You're fucked anyway" and got in his car to drive away. Neil recalled, however, that he left the parking lot after Karst swung the bag of groceries at him. The police arrived afterward and interviewed Karst, Monty, and the convenience store employees.

On May 13, 2021, the State charged Neil in Russell County case No. 21 CR 53 with one count of misdemeanor battery and one count of aggravated intimidation of a witness. The district court consolidated the two cases for trial. The two-day jury trial began on May 31, 2022.

A week before trial, Neil subpoenaed Logsdon to appear at trial as a witness. Logsdon, however, did not appear as scheduled for the first day of trial. At the beginning of the second day of trial, Neil's attorney, Bradley Steen, addressed Logsdon's absence to the district court. Steen told the district court that an individual named Johanna Boettcher was at the courthouse, and she informed Steen that Logsdon was out of town and forgot about the subpoena. The return of service also shows Boettcher was who signed for

4

receipt of the subpoena. Steen believed Logsdon would be available as a witness based on their discussions from May 23, but Steen had no contact with Logsdon after receiving the return of service of the subpoena. Steen attempted to call Logsdon three times during the first day of trial but was unable to reach him. The district court decided to proceed with trial. It is unclear from the record whether Steen formally moved for a jury trial continuance, but he objected to the district court's decision to not continue the trial, which the district court overruled.

Ultimately, the jury found Neil guilty of aggravated assault and two counts of misdemeanor battery but acquitted him of aggravated intimidation of a witness. Following trial, Neil filed a motion for new trial based, in part, on the district court's decision to proceed with trial over his objection. At the motion hearing, Neil argued Logsdon's testimony would have corroborated Neil's testimony about Karst's conduct during the altercation and challenged the credibility of Karst's testimony. The district court concluded that Logsdon's testimony would have only gone to credibility and would not have affected the outcome of the verdict. Neil was acquitted of the aggravated intimidation of a witness charge, and Neil's testimony essentially admitted to the battery charge. Thus, the district court denied Neil's motion for new trial.

The district court sentenced Neil to 29 months' imprisonment. Neil timely appeals.

ANALYSIS

I. *The district court did not abuse its discretion by denying Neil's request for a continuance.*

Neil argues he presented good cause for the district court to continue his jury trial so that he could secure Logsdon's appearance as a witness. Additionally, Neil contends that a new trial would have been in the interest of justice. The State responds that the

district court's decision to proceed with trial was not unreasonable because Logsdon's testimony would not have affected the outcome of the trial.

*Request for Continuance of Jury Trial*

Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." An appellate court reviews the district court's ruling on a motion for a continuance for an abuse of discretion. *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023).

When a party requests a continuance during trial to ensure the availability of a witness, the district court "*should* weigh the possible prejudice to the parties, the diligence or lack thereof in attempting to secure a witness, the materiality and importance of the probable testimony, and the probability of the witness' appearance at a later date if a continuance is granted." (Emphasis added.) *State v. Carter*, 284 Kan. 312, 319, 160 P.3d 457 (2007).

Neil suggests that the district court failed to weigh the four factors, which resulted in an error of law. The record shows no explicit discussion of the factors at the time the district court denied the continuance. In *Carter*, the district court similarly did not discuss the factors when making its ruling, but the Kansas Supreme Court conducted its own analysis of the factors based on the record. The *Carter* court ultimately concluded there was no abuse of discretion despite the district court's failure to properly consider all four factors. 284 Kan. at 319-20.

More recently, however, a Kansas Court of Appeals panel determined in *State v. Brown*, 59 Kan. App. 2d 418, 478, 486 P.3d 624 (2021), *rev. denied* 313 Kan. 1043

(2021), that consideration of the factors is "necessary to ensure the defendant's federal and Kansas constitutional right to present his or her theory of defense is preserved." Thus, the *Brown* district court's failure to discuss the factors when it denied the defendant's *Daubert* hearing and motion for a continuance to ensure the availability of an expert witness was erroneous. 59 Kan. App. 2d at 490. See *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The panel based its reasoning on the language used in *State v. Howard*, 221 Kan. 51, 55, 557 P.2d 1280 (1976), which stated, "the trial judge *must* weigh" the four factors. (Emphasis added.) *Brown*, 59 Kan. App. 2d at 478. Although the *Carter* court cited to *Howard* when providing its rule, its interpretation of *Howard* was not so stringent as to require the district court to make explicit findings under each of the four factors. See *Carter*, 284 Kan. at 319.

The Kansas Court of Appeals is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). But one Kansas Court of Appeals panel may disagree with a previous panel. *State v. Fleming*, 308 Kan. 689, 706, 423 P.3d 506 (2018).

We elect to follow the path set out in *Carter* and proceed with weighing each of the four factors to determine whether the district court's ruling was unreasonable.

Under the first factor, there was little possibility that the omission of Logsdon's testimony would have prejudiced Neil. Neil argued that Logsdon would have testified as to his observations from the incident at the convenience store, including that he never heard Neil threaten to kill Karst because Karst had called the police. The jury ultimately acquitted Neil of the aggravated intimidation of a witness charge, however. We conclude the absence of Logsdon's testimony did not hinder Neil's defense of that charge and would have essentially been repetitive of Neil's testimony.

7

Next, Neil's diligence in attempting to secure Logsdon's appearance was questionable. Steen stated that he had spoken with Logsdon about testifying at trial as a witness, and Logsdon indicated that he would be available. Steen unsuccessfully attempted to call Logsdon multiple times on the day of trial when he realized Logsdon was not present. Steen, however, never followed up with Logsdon to confirm his appearance after filing the subpoena. Likewise, Steen never realized that Logsdon did not personally sign for receipt of the subpoena, and Steen did not contact Logsdon prior to trial to ensure he would honor the subpoena.

For similar reasons to the first factor, Logsdon's testimony would have offered little materiality or importance. Neil and Karst's recollections of the events were relatively similar, and Logsdon's observations would have been repetitive. There was little need for Logsdon to refute Monty's testimony that Neil threatened to kill Karst because the jury found that claim not credible and acquitted Neil of the aggravated intimidation of a witness charge. Further, Logsdon was not even inside the store to witness the push or punch that was alleged to have happened. And Neil admitted to pushing Karst in the convenience store, which served as the basis for the misdemeanor battery conviction. Thus, Logsdon's testimony would not have affected the outcome of the trial.

Finally, the likelihood that Logsdon would have been available to testify at a later date is unclear. At face value, it would appear Logsdon simply forgot the date of the trial, which unfortunately lined up with a scheduling conflict for him to be out of town. However, Logsdon did not sign the return of service on the subpoena, he did not contact Steen to confirm his appearance as a trial witness, and Logsdon was absent at trial only one week after indicating he would be available. And aside from asking the district court to issue a contempt order, Steen did not show great confidence that he would be able to secure Logsdon's availability had the district court granted the continuance.

8

In light of these factors, the district court's decision to deny Neil's request for a continuance was not unreasonable, and thus, did not amount to an abuse of discretion.

*Motion for New Trial*

"The court on motion of a defendant may grant a new trial to the defendant if required in the interest of justice." K.S.A. 22-3501(1). An appellate court reviews the district court's decision on a motion for new trial for an abuse of discretion. *State v. Davidson*, 315 Kan. 725, 728, 510 P.3d 701 (2022). Again, a district court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Bilbrey*, 317 Kan. at 63.

There is no clear rule for a motion for new trial based on the absence of a witness, but the panel may treat this issue as a motion for new trial based upon newly discovered evidence because Neil essentially seeks to add Logsdon's testimony to the record. To establish the right to a new trial based upon newly discovered evidence, the defendant must establish: (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Lyman*, 311 Kan. 1, 17, 455 P.3d 393 (2020). In determining whether new evidence is material, the district judge must assess the credibility of the newly proffered evidence. The appellate court will not reassess the credibility determination made by the district judge at the hearing. 311 Kan. at 17.

At the motion hearing, the district court explained its hesitation to treat Neil's motion as one based upon newly discovered evidence, but it also recognized there was little legal guidance pertaining to motions for new trial based on an absent witness. Regardless, the district court's reasoning primarily mirrored the second factor. The

9

district court pointed out that Logsdon's testimony would not have made any difference on the aggravated intimidation of a witness charge because the jury acquitted Neil of that charge. Then, Logsdon's testimony could have questioned the credibility of Karst's story, but Neil admitted to the acts that constituted the basis for the misdemeanor battery charge. Additionally, Logsdon was not present for the first incident when the aggravated assault happened.

On appeal, Neil maintains Logsdon's testimony would have challenged the credibility of Karst's testimony and, as a result, would have led the jury to believe Neil's version of events. But the Kansas Supreme Court has held "newly discovered evidence that merely tends to impeach or discredit the testimony of a witness is ordinarily not grounds for granting a new trial." *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017).

The district court did not abuse its discretion in denying Neil's motion for new trial. Logsdon's testimony would not have affected the outcome of the trial because Neil was acquitted of the aggravated intimidation of a witness charge and Logsdon was not present during any of the other criminal acts. Thus, the only purpose of Logsdon's testimony would have been to discredit Karst's testimony, which is generally not grounds for a new trial. Logsdon's testimony is not so material that it would be likely to produce a different result upon retrial.

II. *The district court did not err in failing to provide a unanimity instruction for the battery charge.*

Next, Neil argues the district court committed reversible error when it did not provide a unanimity instruction because the State presented evidence of two acts that could support the battery charge in case No. 21 CR 53. The State responds that the district court did not need to provide a unanimity instruction because the State did not

10

allege multiple acts, and if so, any error resulting from the omitted instruction was harmless.

An appellate court reviews unanimity instruction errors under a three-part framework: (1) conduct unlimited review in determining whether a multiple acts case is presented by asking whether jurors heard evidence of multiple acts, each of which could have supported conviction of the charged crime; (2) consider whether the State or district court committed error by failing to inform the jury which act to rely upon or direct the jury that it must agree on the specific act for each charge; and (3) determine whether the error was reversible or harmless. *State v. Smith*, 317 Kan. 130, 136, 526 P.3d 1047 (2023). When, as here, the defendant failed to request a unanimity instruction, the appellate court applies the clearly erroneous standard found in K.S.A. 22-3414(3). 317 Kan. at 136.

The panel must first determine whether the State alleged multiple acts—that is, whether the conduct was either part of one act or multiple acts separate and distinct from one another. In conducting its analysis, an appellate court considers four factors: (1) whether the acts occurred at or near the same time; (2) whether the acts occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated some acts. *State v. Harris*, 310 Kan. 1026, 1039, 453 P.3d 1172 (2019).

To support a conviction for battery, the State had to prove Neil knowingly caused physical contact with Karst in a rude, insulting, or angry manner. PIK Crim. 4th 54.300 (2019 Supp.); see also K.S.A. 21-5413. For the charge of battery associated with case No. 21 CR 53, Neil, Karst, and the cashier all testified that Neil bumped into Karst while Karst was looking at sunglasses. Although Neil and Karst never testified to this, the cashier also claimed that Neil punched Karst in the face when they were leaving the store.

11

Thus, Neil argues the State relied on both acts to prosecute the battery charge, the State did not elect which theory it was pursuing, and this error was not harmless.

Neil is correct that the testimony presented at trial indicates that two separate instances of contact occurred. The first two factors, however, weigh toward Neil's behavior being a single course of conduct because both acts occurred at the convenience store and within a few minutes of each other. Neil's alleged conduct is more aptly defined as one continuing act in which he shoved Karst, followed Karst to the cash register, started an argument, and then punched Karst once he attempted to walk away from the argument.

Under the third factor, the closest resemblance to an intervening event occurred when Karst walked away from Neil after the push and went to the cash register. Karst testified there was no further confrontation at that point in the store. But the record indicates that Neil immediately followed Karst to the cash register and provoked an argument that led to the alleged punch. Thus, Karst's attempt to walk away did not wholly divorce the shoving from the ensuing argument and punch. See *State v. Vano*, No. 124,232, 2023 WL 1487801, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 317 Kan. 850 (2023).

Finally, there was no fresh impulse shown between Neil's initial push and the alleged punch. Both acts stemmed from the same impulse—Neil's animosity toward Karst from the prior incidents, including the altercation that resulted in criminal charges against Neil. During the argument, Neil repeatedly mentioned that Karst had called the police after he hit Karst in the face with his pistol. This clearly served as Neil's reasoning for pushing Karst and then starting an argument. And although Neil became more upset when Karst accused him of killing his dog, Neil's testimony also showed his willingness to fight Karst without the need for a weapon. Each of the four factors points toward unitary conduct, not two separate acts.

12

Because the facts do not show a situation involving multiple acts, a unanimity instruction would not have been appropriate. We find the district court did not err in its failure to give the unrequested unanimity instruction.

Affirmed.